**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JOHN A. MANSOUR, | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| MORGAN STANLEY; MORGAN | § | |
| STANLEY & CO. LLC; MORGAN | § | Civil Action No. 4:24-cv-459 |
| STANLEY SMITH BARNEY LLC; | § | |
| MERRILL LYNCH, PIERCE, FENNER & | § | |
| SMITH INCORPORATED; DEUTSCHE | § | |
| BANK SECURITIES INC.; CHARLES | § | |
| SCHWAB & CO., INC., | § | |
| | § | |
| *Defendants.* | § | |

**MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED'S**
**MOTION TO COMPEL ARBITRATION AND TO STAY PENDING ARBITRATION**
**AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

FACTS .......................................................................................................................... 1

LEGAL STANDARD .................................................................................................. 5

ARGUMENT ............................................................................................................... 6

      A.     The FAA Governs Plaintiff's And Merrill's Agreements To Arbitrate. ............... 7

      B.     The Arbitration Agreements Are Valid And Enforceable. ................................... 7

      C.     Plaintiff's Claims Are Within The Scope Of The Arbitration Agreements........... 8

      D.     Mr. Mansour Cannot Plausibly Show That His Arbitration Agreements
             Are Unenforceable As A Matter Of Federal Law................................................. 9

      E.     The Court Must Stay All Proceedings In This Case Pending Arbitration. .......... 10

CONCLUSION.......................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re A2P SMS Antitrust Litig.*,
   972 F. Supp. 2d 465 (S.D.N.Y. 2013)......................................................................................10

*Am. Int'l Specialty Lines Ins. Co. v. Allied Cap. Corp.*,
   35 N.Y.3d 64 (2020) ...............................................................................................................10

*AT&T Techs., Inc. v. Commn's Workers of Am.*,
   475 U.S. 643 (1986)...................................................................................................................9

*Cameron Par. Recreation #6 v. Indian Harbor Ins. Co.*,
   92 F.4th 1152 (5th Cir. 2024) (per curiam) ............................................................................11

*Dean Witter Reynolds v. Byrd,*
   470 U.S. 213 (1985)...................................................................................................................6

*Edwards v. Doordash, Inc.*,
   888 F.3d 738 (5th Cir. 2018) .....................................................................................................7

*First Options of Chicago, Inc. v. Kaplan,*
   514 U.S. 938 (1995)...............................................................................................................5, 6

*God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*,
   6 N.Y.3d 371 (2006) .................................................................................................................8

*Highland HC, LLC v. Scott*,
   113 A.D.3d 590 (N.Y. App. Div. 2014) ....................................................................................8

*JLR Global, LLC v. PayPal Holding Co.*,
   No. 22-cv-559, 2023 WL 2527158 (E.D. Tex. Mar. 15, 2023) (Mazzant, J.) ........................10

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011).....................................................................................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).......................................................................................................................9

*Olde Discount Corp. v. Tupman*,
   1 F.3d 202 (3d Cir. 1993)...........................................................................................................9

*Rodriguez de Quijas v. Shearson/American Exp. Inc.*,
   490 U.S. 477 (1989)...................................................................................................................9

*Shearson/American Exp., Inc. v. McMahon*,
  482 U.S. 220 (1987)................................................................................................9

*Smith v. Spizzirri*,
  144 S. Ct. 1173 (2024)......................................................................................6, 11

*Tittle v. Enron Corporation,*
  463 F.3d 410, 418 (5th Cir. 2006) ........................................................................7

*Wealth Rescue Strategies, Inc. v. Thompson*,
  No. CIV. A. H-08-3107, 2009 WL 3878083 (S.D. Tex. Nov. 17, 2009) ............6, 7

Statutes

9 U.S.C. § 2...............................................................................................................5, 7

9 U.S.C. § 3..................................................................................................... *passim*

9 U.S.C. § 4...............................................................................................................1, 10

18 U.S.C. § 1962......................................................................................................8, 9

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ..................................................... *passim*

Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill" or "Merrill Lynch") hereby files this motion and memorandum of law in support of its motion to compel arbitration and to stay this action pending arbitration.

## INTRODUCTION

In multiple written agreements, Mr. Mansour explicitly agreed that "all controversies that may arise between Merrill Lynch and [Mr. Mansour] shall be determined by arbitration."

Mr. Mansour has flagrantly violated those agreements by bringing this case.  He has refused to reconsider upon being confronted, through counsel, with his agreement to arbitrate.  As a result, Merrill has no choice but to ask the Court to enforce the relevant arbitration agreements pursuant to 9 U.S.C. § 4 and immediately to stay this case, insofar as it relates to Merrill, pursuant to 9 U.S.C. § 3.[1]

## FACTS

Merrill is an SEC-registered broker-dealer that offers brokerage accounts and an SEC-registered investment adviser.  *See* Declaration of Jeff Goldman ("Goldman Decl.") Ex. 4, 5. Merrill offers brokerage accounts and related financial services to its customers.  *See* Declaration of Jesus Sanchez ("Sanchez Decl.") ¶ 1.

---

[1] Please note that Merrill Lynch is not filing this motion pursuant to Rule 12 of the Federal Rules of Civil Procedure, as a motion to compel arbitration is not properly considered a Rule 12 motion. *See, e.g., Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 890 (7th Cir. 2020) (holding that a motion to compel arbitration is a motion under § 4 of the FAA, not Rule 12); *accord Rodgers-Rouzier v. Am. Queen Steamboat Operating Co.*, -- F.4th --, 2024 WL 3034849, at *4 (7th Cir. June 18, 2024) (holding that a motion to compel arbitration is not governed by Rule 12). A contrary understanding could not be reconciled with the Supreme Court's recent decision in *Smith v. Spizzirri*, 144 S. Ct. 1173 (2024), which held that "when a federal court finds that a dispute is subject to arbitration, … the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration," but must stay the litigation pending arbitration. *Id*. at 1176. Merrill intends to respond to Mr. Mansour's complaint by August 12, 2024, the deadline set by this Court's order dated June 7, 2024, should the Court not rule on the instant motion before that time.

Around September 2007, Mr. Mansour became a Merrill client, opening several accounts that he references in the Complaint (ECF No. 1).  For example, the account referenced in the Complaint at ¶ 357 was opened pursuant to an agreement Mr. Mansour signed on September 10, 2007, *see* Sanchez Decl. Ex. 1.  Mr. Mansour also opened accounts and initiated advisory services in the years that followed.  For example, the account referenced in the Complaint at ¶ 347 was managed pursuant to an investment advisory agreement Mr. Mansour signed on January 22, 2011, *see* Sanchez Decl. Ex. 3.

Mr. Mansour's Merrill accounts were opened pursuant to a Client Relationship Agreement, which highlighted Mr. Mansour's agreement to arbitrate any disputes he may have with Merrill. Indeed, the Client Relationship Agreement called out its arbitration clause in its opening paragraphs:

> The Client Relationship Agreement is intended to simplify your relationship with Merrill Lynch. When you agree to the terms of this agreement, you are agreeing that its terms will apply to all your accounts, transactions and services while you are our client.
>
> In particular, you are agreeing:
>
> • To arbitrate all controversies that arise between us;
>
> . . .
>
> • That New York law governs your agreements and transactions unless we indicate otherwise.

Sanchez Decl. Ex 2.  The Client Relationship Agreement also provided:

> **This Agreement contains a predispute arbitration clause. By signing an arbitration agreement the parties agree as follows:**
>
> **• All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**
>
> **• Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**

> **• The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**
>
> **• The arbitrators do not have to explain the reason(s) for their award.**
>
> **• The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**
>
> **• The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.**
>
> **• The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.**
>
> **You agree that all controversies that may arise between us shall be determined by arbitration. Such controversies include, but are not limited to, those involving any transaction in any of your accounts with Merrill Lynch, or the construction, performance or breach of any agreement between us, whether entered into or occurring prior, on or subsequent to the date hereof.**

Sanchez Decl. Ex. 2 (emphasis in original).

Additional documents Mr. Mansour signed in connection with his election of certain investment advisory services included substantially identical arbitration provisions, requiring the arbitration of:

> **ALL CONTROVERSIES WHICH MAY ARISE BETWEEN MERRILL LYNCH AND THE CLIENT . . . SUCH CONTROVERSIES INCLUDE, BUT ARE NOT LIMITED TO, THOSE INVOLVING AN INVESTMENT MANAGER, ANY TRANSACTION IN ANY OF THE CLIENT'S ACCOUNTS WITH MERRILL LYNCH, OR THE CONSTRUCTION, PERFORMANCE OR BREACH OF ANY AGREEMENT BETWEEN MERRILL LYNCH AND THE CLIENT, WHETHER ENTERED INTO OR OCCURRING PRIOR ON OR SUBSEQUENT TO THE DATE HEREOF.**

Sanchez Decl. Ex. 4 at § 16 (emphasis in original).  Many of those forms also referenced the incorporated arbitration agreement in bolded letters immediately above Mr. Mansour's signature:

> **You [] acknowledge that, in accordance with Paragraph 16 of the Client**

3

> **Agreement, you are agreeing in advance to arbitrate any controversies which may arise with Merrill Lynch . . ..**

Sanchez Decl. Ex. 3 (emphasis in original).

In early February 2021, Merrill sent Mr. Mansour a detailed letter, which explained that Mr. Mansour's recent behavior had been problematic and that, as a result, Merrill would no longer execute his orders to purchase securities.  *See* Goldman Decl. Ex. 1.  The letter stated, in part:

> . . . over the past nine months, we have seen a significant change in the manner in which your Merrill portfolio has been invested. . . .  Beginning in approximately March 2020, you moved increasing percentages of your Merrill assets from investment advisory accounts to brokerage accounts where you were making trading decisions without input from Merrill. . . .  [Y]ou have increasingly been making frequent equity and ETF trades in your brokerage accounts. Those trades have been based on your own, unsolicited instructions. No one at Merrill has been recommending the trades in your brokerage accounts.

*Id.*  The letter also stated

> You have also made frequent mention of your theory that nefarious organizations or individuals may have taken funds from your accounts. Despite talking about that theory for several months, you have never identified any transactions that you believe were unauthorized. We have not identified any unauthorized transactions, either. We are happy to provide information about the destination of, and authorization for, any disbursements from your Merrill accounts that you would like to review.

*Id.*

Consistent with the February 2021 letter, Mr. Mansour transferred substantially all of his holdings to a different financial firm in the early spring of 2021.  *See* Sanchez Decl. ¶ 9.  Mr. Mansour's sole holding at Merrill since that time has been an interest in a private equity fund that is not easily transferrable to a different custodian.  *See* Sanchez Dec. ¶ 10.  In early 2022, counsel for Merrill reached out to the lawyer representing Mr. Mansour at the time, stating in part:

> We write regarding Mr. Mansour's frequent calls, text messages, and emails to Merrill employees, including on their personal telephone numbers.

4

Mr. Mansour retains a very small percentage of his investment assets at Merrill. Merrill remains happy to assist Mr. Mansour with inquiries relating to those assets. In addition, we are happy to respond to any additional reasonable requests you may have for Mr. Mansour's historical account information.

However, Merrill respectfully requests that Mr. Mansour refrain from further communications to Merrill personnel that do not concern his assets remaining in Merrill accounts. Mr. Mansour's frequent calls, texts, and emails on subjects unrelated to his current holdings are distracting, and have also become distressing, to the individuals he has been contacting.

Goldman Decl. ¶ 7 and Ex. 2.  Around the same time, Merrill sought to completely terminate its relationship with Mr. Mansour by facilitating a sale of his private fund interest; however, Mr. Mansour declined to sell the fund interest.  *See* Goldman Decl. ¶ 8 and Ex. 3.

Now, more than three years after Merrill largely terminated its relationship with Mr. Mansour in part because of his "theory that nefarious organizations or individuals may have taken funds from [his] accounts," Mr. Mansour has turned that same theory into this lawsuit, which he is pursuing through yet another group of lawyers.

## LEGAL STANDARD

Arbitration is, and has long been, a matter of contract.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA") applies to any written agreement to arbitrate a transaction involving interstate commerce.  9 U.S.C. § 2.  "Agreements to arbitrate that fall within the scope and coverage of the [FAA] must be enforced in state and federal courts.  State courts, then, 'have a prominent role to play as enforcers of agreements to arbitrate.'"  *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011) (internal citation omitted).  As the Supreme Court has recently held, under the FAA, the Court should stay proceedings in favor of arbitration during the pendency of the arbitration.  9 U.S.C. § 3; *Smith v. Spizzirri,* 601 U.S. 472, 477-78 (2024).

Under the FAA, a written agreement to submit disputes involving commerce to arbitration "'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). The FAA was designed "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," and to place arbitration agreements "upon the same footing as other contracts." *Id.* at 219-20. Even where the FAA governs the interpretation of an arbitration agreement, state law governs the formation of the contract. *See First Options of Chicago, Inc.,* 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). The FAA additionally governs the agreement between Plaintiff and Merrill because Merrill, as a FINRA member firm, is engaged in business that qualifies as "involving commerce" under the FAA's provisions. *See Wealth Rescue Strategies, Inc. v. Thompson*, No. CIV. A. H-08-3107, 2009 WL 3878083, at *2 (S.D. Tex. Nov. 17, 2009) (finding a FINRA arbitration agreement satisfactory where "the broad nature of the duty to arbitrate—all business activities between [FINRA] associated persons—clearly encompasses the claims at interest here.").

## ARGUMENT

Plaintiff and Merrill agreed that "**all controversies which may arise between Merrill Lynch and the Client shall be determined by arbitration**." Sanchez Decl., Ex. 4 § 16. For the avoidance of doubt, the parties further agreed that "all" controversies "**include, but are not limited to, those involving an investment manager [and] any transaction in any of the client's accounts with Merrill Lynch.**" *Id*. Plaintiff alleges, *inter alia*, a dispute regarding his Merrill accounts and transactions in those accounts. Accordingly, as explained below, the FAA compels Plaintiff to arbitrate his claims and to stay this action until the arbitration is completed. *See Wealth Rescue Strategies, Inc.* 2009 WL 3878083, at *2 (finding a FINRA arbitration agreement

6

satisfactory where "the broad nature of the duty to arbitrate—all business activities between [FINRA] associated persons—clearly encompasses the claims at interest here.").

## A.    The FAA Governs Plaintiff's and Merrill's Agreements to Arbitrate.

It is well settled that the FAA applies to written arbitration provisions in contracts "evidencing a transaction involving [interstate] commerce," such as the securities brokerage account agreements between Plaintiff and Merrill at issue here.  9 U.S.C. § 2.  A court may compel arbitration where it makes two determinations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quotations omitted). And, "whether legal constraints external to the parties' agreement foreclose[s] the arbitration of those claims." *Id.* (quotations omitted).

## B.    The Arbitration Agreements Are Valid and Enforceable.

Plaintiff's client agreement contains a choice-of-law provision, and the question of validity and enforceability is one of state law.  *See Edwards v. Doordash, Inc.*, 888 F.3d 738, 745 (5th Cir. 2018) ("We use state law to evaluate the underlying agreement.")  Here, the parties chose New York law.  *See* Sanchez Decl. ¶ 8, Ex. 4, § 14 ("This agreement is made and will be interpreted under the laws of the State of New York").

The Client Relationship Agreement signed by Plaintiff contains a valid, enforceable arbitration agreement.  When Plaintiff opened his Merrill accounts, he agreed that he would be bound by the Arbitration Agreement in the Client Relationship Agreement. Sanchez Decl. ¶ 6, Ex. 2 § 8.  Specifically, in executing the Client Relationship Agreement, Plaintiff affirmatively acknowledged that he was "AGREE[ING] TO THE TERMS OF THE MERRILL LYNCH CLIENT RELATIONSHIP AGREEMENT."  Sanchez Decl. ¶ 5, Ex. 1. Directly above Plaintiff's signature, the Application also specifically called Plaintiff's attention to the Arbitration Agreement

7

in Section 16 of the Client Relationship Agreement.  *Id.*  The Arbitration Agreement itself is in clear language, accompanied by disclosures of its import, and set out in its own section in bold type within the Client Relationship Agreement. Sanchez Decl. ¶ 6, Ex. 2 § 8.  Merrill made the Client Relationship Agreement readily available to Plaintiff at any time and repeatedly advised him that it governed the terms and conditions of his accounts. Sanchez Decl. ¶ 6, Ex. 2 § 1.

This type of agreement to arbitrate is valid under well-established New York law.  *See Highland HC, LLC v. Scott*, 113 A.D.3d 590, 593-94 (N.Y. App. Div. 2014) (party agreed to arbitrate dispute where it signed an agreement referencing an arbitration provision, did not object to any language in the contract, accepted services under the contract, and commenced action alleging, *inter alia*, breach of the contract); *see also God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 6 N.Y.3d 371, 373-74 (2006) (noting the "long-standing rule that an arbitration clause in a written agreement is enforceable, even if the agreement is not signed," where plaintiff was provided with the agreement and "both parties operated under [the agreement's] terms").

### C.    Plaintiff's Claims Are Within the Scope of the Arbitration Agreements.

The Arbitration Agreement could not be more clear, and plainly covers the causes of action raised by Plaintiff's Complaint.  Plaintiff asserts six causes of action: (1) violation of 18 U.S.C. § 1962(c) (RICO claim); (2) violation of 18 U.S.C. §1962(d) (RICO claim); (3) fraud; (4) breach of fiduciary duty; (5) conversion; and (6) unjust enrichment.  Each of these causes of action stem from alleged transactions in the Plaintiffs' brokerage accounts with Merrill and/or alleged breach of Plaintiff's agreement with Merrill.

Plaintiff's claims against Merrill plainly fall within the scope of the Arbitration Agreement. The FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-

25 (1983); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (a dispute must be arbitrated unless there is a "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage"). The United States Supreme Court also has emphasized a strong preference for the enforcement of arbitration agreements, particularly in the context of disputes involving securities brokerage accounts.  *See, e.g.*, *Rodriguez de Quijas v. Shearson/American Exp. Inc.*, 490 U.S. 477, 485 (1989) (holding predispute agreement to arbitrate Securities Act claims enforceable); *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 238 (1987) (holding pre-dispute agreement to arbitrate RICO claims enforceable); *accord Olde Discount Corp. v. Tupman*, 1 F.3d 202, 208 (3d Cir. 1993) ("[T]he arbitration of securities disputes now is not only permitted, but favored, under federal law, according to the line of decisions culminating in *McMahon* and *Rodriguez de Quijas*.").

Here, the Arbitration Agreement includes clear, unambiguous language that broadly covers "all controversies that may arise between us" including "any transaction in any of [Plaintiff's] accounts with Merrill Lynch, or the construction, performance or breach of any agreement between [Plaintiff and Merrill]."  Sanchez Decl. ¶ 6, Ex. 2 § 8.  As described above, Plaintiff's claims against Merrill are based on the Plaintiff's relationship with Merrill as an account holder, which is referred to repeatedly throughout the Complaint.  Plaintiffs' claims are squarely covered by the Arbitration Agreement.

## D.   Mr. Mansour Cannot Plausibly Show That His Arbitration Agreements Are Unenforceable as a Matter of Federal Law.

Mr. Mansour has no basis for contending that the valid arbitration agreement he signed multiple times is unenforceable as a matter of federal law, as appears to be his intention.  There are at least two reasons. "First, pursuant to the FAA, 'in passing upon a [FAA] § 3 application for

9

a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate,' and may not consider challenges to the contract generally."  *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 481 (S.D.N.Y. 2013) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) and applying arbitration provision under New York state law.).  *See also* 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration . . .  is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.").  Since there is no question that Mr. Mansour did, in fact, make the arbitration agreements evidenced in the fact section above, the FAA requires him to raise any objections to the validity of the arbitral forum to the arbitrators.  Second, the arbitration agreement, like the rest of Mr. Mansour's agreements with Merrill, must be enforced pursuant to New York law, which also favors enforcement of arbitration agreements. S*ee generally Am. Int'l Specialty Lines Ins. Co. v. Allied Cap. Corp.*, 35 N.Y.3d 64, 70 (2020) (discussing "New York's long and strong public policy favoring arbitration") (internal quotation marks omitted).  In short, any claim Mr. Mansour may wish to make about the validity of the FINRA arbitral forum must be left to the arbitrators to decide.  *See, e.g., JLR Global, LLC v. PayPal Holding Co.*, No. 22-cv-559, 2023 WL 2527158, at *6 (E.D. Tex. Mar. 15, 2023) (Mazzant, J.) (holding that claims were subject to arbitration agreement governing "all disputes or claims that have arisen or may arise" between plaintiff and defendant).

**E.     The Court Must Stay All Proceedings in This Case Pending Arbitration.**

Pursuant to Section 3 of the FAA, all proceedings in this matter concerning Merrill must be stayed pending the Court's decision on this motion and for the duration of the ensuing arbitration.  The Supreme Court has recently confirmed a stay is appropriate where a party challenges a lawsuit based on an arbitration clause. See *Smith*, 601 U.S. at 478 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending

arbitration, § 3 of the FAA compels the court to stay the proceeding."); *see also Cameron Par. Recreation #6 v. Indian Harbor Ins. Co.*, 92 F.4th 1152, 1154 (5th Cir. 2024) (*per curiam*) (holding that district court's decision to permit "limited discovery" before resolving motion to compel arbitration was immediately appealable and constituted error).  Therefore, the Court should stay this proceeding insofar as it involves Merrill until after a duly-selected arbitration panel issues its award resolving Mr. Mansour's claims against Merrill.

## CONCLUSION

For the foregoing reasons, Merrill respectfully requests that this Court both (1) direct Plaintiff to arbitrate his claims against Merrill before FINRA in accordance with his multiple agreements to do so; and (2) stay this action insofar as it involves Merrill pending the completion of arbitration.

Dated: July 16, 2024

Respectfully submitted,

**MERRILL LYNCH, PIERCE, FENNER AND SMITH INCORPORATED**

By its attorneys

**/s/** Timothy P. Burke
Timothy P. Burke, *pro hac vice*
timothy.burke@morganlewis.com
Jeff Goldman, *pro hac vice*
jeff.goldman@morganlewis.com
Andrew M. Buttaro, no. 24092207
andrew.buttaro@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110
Tel: 617.341.7700
Fax: 617.341.7701

David I. Monteiro, no. 24079020
david.monteiro@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main St., Suite 3200
Dallas, TX 75201-7347
Tel: 214.466.4000
Fax: 214.466.4001

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to all registered participants.

/s/ Timothy P. Burke
Timothy P. Burke

## **<u>CERTIFICATE OF CONFERENCE</u>**

Pursuant to Local Rule CV-7(h), I certify that on Friday, June 28, I took part in a phone conference through which Plaintiff's counsel was notified that that Merrill Lynch intended to file a motion to compel arbitration, and that Plaintiff's counsel stated during the same call that Plaintiff intended to oppose any such motion.

/s/ Jeff Goldman
Jeff Goldman

13